The St. Louis and Peoria Railroad Company

*v.*

James E. Kerr *et al.*

*Filed at Springfield October 30, 1894.*

1. CONTRACT—*for grading railroad—refusal of estimates of work.* The refusal, on reasonable demands made, of an engineer to furnish estimates of work for grading a railroad will not defeat a sub-contractor's recovery for such work, even though the contract provides that payments shall be made only on such estimates.

2. LIEN—*of sub-contractor of railroad work—when it attaches.* The lien of a sub-contractor of railroad work attaches, under the statute, when the work is commenced, and continues until it is finished, but the same remains inchoate until the notice required by the statute is given.

3. SAME—*when sub-contractor's lien will be superior to mortgage.* Such a sub-contractor, who begins work under his contract before a mortgage covering the railroad property is recorded, though after its execution, has a prior lien over such mortgage.

4. SAME—*words "existing lien," in statute, construed.* The words "existing lien," in section 56 of chapter 82, mean a lien existing *when the work commences,* and not when the notice of the sub-contractor is served.

5. SAME—*provision of statute as to notice construed.* The provision in section 57, chapter 82, that no sub-contractor's lien "shall attach" until notice shall have been served as required in that section, means that the inchoate lien will cease, and not become a fixed lien, if the notice is not given.

6. Notice—*by sub-contractor—sufficiency of.* When improper words used in a sub-contractor's notice can be stricken out as surplusage, and leave the notice complete, the notice will be sufficient.

7. Parties—*holders of bonds payable to bearer not necessary.* While, generally, a *cestui que trust,* as well as the trustee, should be made a party in chancery, yet where the holders of bonds payable to bearer are numerous, their representation by the trustee in the mortgage is sufficient.

Appeal from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. Alonzo S. Wilderman, Judge, presiding.

Messrs. Conkling & Grout, for the appellant:

The parties have agreed in this case to accept and abide by the classification of the engineer, and no fraud or mistake having been proven, his decision is final. *Coey* v. *Lehman,* 79 Ill. 173 ; *Downey* v. *O'Donnell,* 86 id. 49 ; 92 id. 559 ; *Finney* v. *Condon,* 86 id. 78 ; *Snell* v. *Brown,* 71 id. 133.

Even if the engineer, by mistake in judgment, erred in condemning or rejecting work, it would be no ground to impeach his estimate. (*Herrick* v. *Railway Co.* 27 Vt. 673.) It is the opinion or judgment of the engineer that the contract makes conclusive on the questions submitted to his decision. *County of Cook* v. *Harms,* 108 Ill. 161.

The lien is given by the statute, and is in derogation of the common law, and is opposed to common right, and should be strictly construed. *Belanger* v. *Hersey,* 90 Ill. 70 ; *Crowl* v. *Nagle,* 86 id. 437; *Rothgerber* v. *Dupuy,* 64 id. 453 ; *Cook* v. *Heald,* 21 id. 429.

As the law has not specifically given a lien, no sentimental idea of what ought to be can add to the terms or conditions of the statute. *Railroad Co.* v. *Watson,* 85 Ill. 531.

The holders of the bonds were necessary parties. *Scanlan* v. *Cobb,* 85 Ill. 296 ; *Clark* v. *Manning,* 95 id. 580 ; *McGraw* v. *Bayard,* 96 id. 146.

Until appellees made an honest endeavor to find the holders of the bonds, and failed, they cannot complain,

and seek refuge behind the plea of want of knowledge. *Bennett* v. *Mining Co.* 119 Ill. 10; *Bannon* v. *Thayer*, 124 id. 451.

Messrs. BROWN, WHEELER & BROWN, for the appellees:

Where a party refuses to cause the work to be estimated by his engineer, the contractor has the right to resort to other evidence. *Hotham* v. *East India Co.* 1 Term Rep. 639; *Canal Trustees* v. *Lynch*, 5 Gilm. 521.

Had the engineer given the estimate and classification, it was open to the complainants to impeach it for fraud or mistake. *Stose* v. *Heissler*, 120 Ill. 439.

Where the railroad is incomplete when the mortgage is executed, but in process of construction, the contractor's lien takes precedence over the mortgage. 2 Wood on Railways, sec. 292; *Meyer* v. *Harnby*, 101 U. S. 728; *Brooks* v. *Railway Co.* id. 443; *Construction Co.* v. *Meyer*, 100 id. 457; *Nelson* v. *Railroad Co.* 44 Iowa, 71.

The rule is without exception, that if a proper party is omitted, the objection must be taken by demurrer, plea or answer. 1 Daniell's Ch. Pl. and Pr. p. 285, note 2.

The following authorities, amongst many, clearly establish the proposition that it was not necessary to make the holders of these bonds parties to the bill: Jones on Railroad Securities, sec. 438, *et seq.*; *Shaw* v. *Railroad Co.* 5 Gray, 162; *Supervisors* v. *Railroad Co.* 24 Wis. 93; *Corcoran* v. *Railroad Co.* 94 U. S. 741; *Kerrison* v. *Stewart*, 93 id. 155; *Van Vechten* v. *Terry*, 2 Johns. Ch. 197.

Mr. JUSTICE BAKER delivered the opinion of the court:

This was a suit in equity, by appellees, against appellant and others, to enforce a lien in favor of the complainants, and against the railroad of the defendant railroad company, for work done as sub-contractors, under the firm of A. M. Wing & Co., who had the contract with the railroad company for the construction of its road from Mount Olive, in Macoupin county, to Alhambra, in

Madison county. The bill was filed in the Madison county circuit court on November 11, 1889, and sets up that complainants contracted with A. M. Wing & Co., on April 27, 1889, for clearing, grubbing and grading the road between the points above named, the distance being about fifteen miles; that Wing & Co. were the immediate contractors for said work, and complainants sub-contractors under them; that complainants at once entered upon the work, but after thirty days the contract was modified by mutual consent, complainants being released from further work south of Silver creek; that complainants afterwards completed the work according to the contract as modified, about August 20, 1889, except part of what was known as the "big cut," from which Wing & Co. released them, agreeing to pay for the work which had been done; that the work was accepted by the railroad company; that it was the duty of Wing & Co. and their engineer to measure and furnish estimates to the complainants of the work done and amount due therefor, but that they failed to do so, though often requested by complainants, and that Wing & Co. ordered the engineer not to furnish such estimates. The amount claimed by the bill to be due is $5000. It also alleges that the notice required by the statute in such cases, dated September 2, 1889, had been served by complainants on D. L. Wing, president of the railroad company, with a copy of said sub-contract attached. The prayer is for a lien on all the railroad property of the defendant company. The Central Trust Company of New York was made a defendant, with the allegation that it has an interest in said property subordinate to the lien of complainants. A. M. Wing and D. L. Wing, partners as A. M. Wing & Co., and the railroad company, were also made defendants.

On December 16, 1891, complainants amended their bill, alleging that on June 24, 1889, the St. Louis and Peoria Railroad Company gave a trust deed to the Central Trust Company on its railroad then owned or there-

after to be acquired, to secure one hundred and eighty-two $1000 bonds, payable to bearer, which trust deed was recorded June 28, 1889, while the road was being built; that said bonds were sold to various persons unknown to complainants, and are negotiable by delivery, only, and that the bonds and holders thereof are numerous, and the trust company, in equity, stands for all holders and is authorized to represent them.

A. M. Wing answered, that under the name of A. M. Wing & Co. he entered into the contract of April 27, 1889, set up in the bill, he being the immediate contractor with the St. Louis and Peoria Railroad Company, but he denied there had been any modification of such contract, or that complainants completed their contract at any time, and denied that he released them in any respect, or agreed to pay for part performed, or that either he or the railroad company accepted the work; denied that estimates were not furnished, but claimed all provisions of the contract as to estimates were fully complied with; denied that there was anything due complainants under the contract, or that they are entitled to any relief, and prayed same advantage of answer as if he had demurred to the bill.

D. L. Wing answered under oath, admitting the execution of the contract, but denying that he was then, or ever had been, a member of the firm of A. M. Wing & Co., and saying that of most of the other allegations of the bill he was ignorant.

The Central Trust Company answered, denying the claim of complainants, setting up its own interest, and denying that it is subordinate to the rights of complainants. It alleges its interest to be by virtue of a trust deed dated April 20, 1889, from the St. Louis and Peoria Railroad Company and the Mount Olive Coal Company, jointly, to secure bonds to the amount of $182,000, recorded June 27, 1889, in Macoupin county, and June 28 in Madison county, on all the property of the railroad company

which it then had or might thereafter acquire, and denies that complainants are entitled to any relief against it.

The St. Louis and Peoria Railroad Company answered, that it does not know the terms of the contract between complainants and Wing & Co., or who composed that firm. Said answer admits that it had a contract with Wing & Co. to build its road; denies knowledge of any modification of contract between complainants and Wing & Co., or what work the former did under the contract, or of any release, or failure of Wing & Co. to make estimates for work done; says, on information, that nothing is due complainants; states that D. L. Wing is no longer president or connected with the road; neither admits nor denies service of alleged notice of September 2, 1889; denies complainants are entitled to the lien or relief prayed, and seeks advantage of answer as if on demurrer or plea. On December 16, 1891, it filed a supplemental answer, setting up the trust deed to the Central Trust Company; that the bonds are outstanding and unpaid, and held or owned by not to exceed six or eight persons, and that such persons are necessary parties but have not been made such; that the trustee has no active duties, but a power of sale, only; that complainants cannot maintain their suit because not begun within the time limited by statute, and that complainants have no right to a lien, and praying advantage of answer as in case of plea or demurrer.

General replications were filed to the several answers. The circuit court found the equities with the complainants; that they entered upon the construction of the road on April 27, 1889, and continued at work until August 17, 1889, and that they did 45,948 cubic yards of embankment, 79,497 cubic yards of earth excavation, and cleared 23 and 10-100 acres of ground; found them entitled to nine cents per cubic yard for embankment, eleven cents per cubic yard for earth excavation, 6000 yards of which was hard-pan, and found them entitled to thirty-five cents per cubic yard for hard-pan excavation, and $40 per acre for clear-

ing, making a total of $15,243.99; that Wing & Co. paid them $10,639.17, and are indebted to them for the balance; that on September 2, 1889, complainants caused written notice to be served on the president of the railroad company, notifying him that they had said sub-contract, and would hold the corporate property for the payment thereof, to which notice a copy of the contract was attached, and that the railroad company paid Wing & Co. $7000 after notice; found that the mortgage to the Central Trust Company, dated April 20, 1889, was executed June 24, 1889, and filed for record June 27, 1889, in Macoupin county, and June 28, 1889, in Madison county; found that an estimate of Wing & Co.'s engineer, of work done in June, was furnished; that final estimate of work was made by him and given to Wing & Co., but, although requested, they refused to furnish it to complainants. The court decreed payment of $5184.15 to complainants within sixty days, and five per cent interest until paid, and that complainants have a lien for said sum, costs, and $20 attorney's fee, superior and prior to the Central Trust Company's trust deed; and the decree contained the usual provisions for sale in case of default in payment. Appellant appealed to the Appellate Court, where the decree of the circuit court was affirmed, and it now prosecutes this appeal.

The contract of appellees with A. M. Wing & Co., so far as it affects the issues involved in this case, is as follows:

"Contract dated April 27, 1889, J. E. Kerr & Bros., party of the first part, A. M. Wing & Co., party of the second part. * * * It is agreed to accept and abide by engineer's measurements and specifications hereunder, and acceptance or condemnation of work and materials; * * * that second party pay about 20th of each month * * * per cent of sum due for work and material of preceding month, according to estimate of quantities made about the first of each month by the engineer, at following

prices : Embankment, per cubic yard, nine cents ; excavation, earth, per cubic yard, eleven cents; excavation, hardpan, per cubic yard, thirty-five cents ; excavation, loose rock, per cubic yard, thirty-five cents ; excavation, solid rock, per cubic yard, eighty cents.   *   *   *   Hard-pan shall consist of tough indurated clay or cemented gravel, which requires blasting or equally expensive means for its removal, or which can not be plowed with less than six horses and a railroad plow, or which requires two pickers to one shoveler, the engineer to be the judge of conditions."

The errors of the circuit and Appellate Courts insisted on in this court by counsel for appellant are as follows : "The court erred in finding that 6000 cubic yards of excavation were hard-pan."   "The court erred in decreeing that A. M. Wing & Co., or some one of the defendants for them, pay complainants $5184.15."   "The court erred in decreeing the said sum to be a lien upon the property of the railroad superior to the lien of the Central Trust Company."   "Certain necessary defendants were not made parties to the action."   "The court erred in allowing interest on the sum of $4604.82."

Under the first of these assignments of error it is insisted that the circuit court was unauthorized by the proofs to allow the price of excavating hard-pan for any portion of the work done.   This position is based on the theory that the provisions in the contract for estimates of the work by the engineer make such estimates a condition precedent to payment, and also on the ground that a preponderance of the evidence fails to show that there was any hard-pan.   The circuit court found and recited in its decree that for the months of May and June the engineer only made partial estimates of the work, and that it was so understood by all parties, and that no other estimate was made by the engineer until nearly two years after the completion of the work; that "the engineer, while nominally, and perhaps in fact, the employee of the railroad company, was apparently under

the control of D. L. Wing, who was acting in the double capacity of president of the railroad company and chief contractor." The contract provided, "that second party (A. M. Wing & Co.) pay about 20th of each month—per cent of sum due for work and material of preceding month, according to estimates of quantities made about the first of each month by the engineer." The evidence shows that the engineer made the estimates on the completion of the work and delivered the same to D. L. Wing, and that no estimates were furnished appellees, after the partial estimates of May and June, until after this suit was brought, and some two years after the completion of the work. The evidence also clearly shows, and it is not denied, that the complainants below frequently applied to the engineer, as also to the principal contractor, under whose control the engineer was, for estimates, as provided for in the contract, and were unable to obtain the same. Kleinbeck, chief engineer testifies: "They spoke to me several times, applying for the estimates, and it was my intention to settle up with Kerr Bros., but I got involved myself with D. L. Wing, and turned everything over to him and left him." James E. Kerr testifies: "I received no estimate after the one given for the June work. I asked for it a number of times. I asked Mr. Harper, division engineer, also Mr. Kleinbeck, A. M. Wing and D. L. Wing. I wrote A. M. Wing for it a time or two. A. M. Wing said he could not furnish them, or would not, without the consent of D. L. Wing. Mr. Harper said the estimates had gone out of his hands, and he could not furnish them." Appellant is therefore in no position to insist on the terms of the contract being complied with in relation to the classification of the work by such estimates, because it, by its own wrongful or negligent act, prevented that part of the contract from being complied with. Clearly, appellees could not be concluded by estimates and classification of the engineer when no estimates were made, or, if made, withheld from them by the other

party, nor could their right to payment for work actually done be defeated for want of such estimates, they having shown that they used every reasonable effort to procure them, and failed through the misconduct of A. M. Wing & Co. and appellant. The final estimates of the work done were made and delivered to Wing about the first of September, 1889. For about two years he withheld those estimates from appellees, and now the attempt is made to defeat a recovery because they were not obtained. No clearer case of an attempt to take advantage of one's own wrong could be presented.

We are also of the opinion that the decree of the circuit court as to the fact that hard-pan was excavated, and the quantity thereof, is fully supported by the evidence.

It is next insisted that appellees are not, as a matter of law, entitled to a lien superior to that of the mortgage of the Central Trust Company. The proper determination of this question depends upon the construction of section 56, chapter 82, of the Revised Statutes, as applied to the facts of this case. That section is as follows: "Every person who shall hereafter, as sub-contractor, * * * do and perform any work or labor for such contractor in conformity with any terms of any contract, express or implied, which such contractor may have made with any such railroad corporation, shall have a lien upon all the property, real, personal and mixed, of said railroad corporation: * * * And provided further, no such lien shall take priority over any existing lien."

The contract between the railroad company and A. M. Wing & Co. was made April 9, 1889, and the contract between A. M. Wing & Co. and appellees on the 27th of the same month. The evidence shows that appellees commenced work on their sub-contract May 3, 1889, and continued to prosecute the same continuously up to August 17, 1889, when it was finished. The mortgage given by the railroad company to the Central Trust Company, as

shown above, bears the date of April 20, 1889, but was not finally executed until June 24, 1889, and was filed for record in Macoupin county June 27, 1889. The lien of appellees attached at the time they commenced work, and continued until it was finished. This lien, then, was existing at the time the mortgage was filed for record, and the law charges the mortgagee with notice of this fact. Section 57 of chapter 82 provides how notice shall be served, and closes as follows : "*Provided*, that no lien shall attach in favor of any person performing such labor or furnishing material until such notice shall have been served as above or filed for record as hereinafter provided."

Counsel for appellant contend that under the provisions of the section of the statute just quoted, the lien of appellees did not attach until September 2, 1889. On this question we concur in the following views of the Appellate Court : "It is next urged that the appellees did not take such steps as to secure to them a lien superior to that of the mortgage held by the Central Trust Company. * * * It is not apparent how the railroad company can be affected by the question, nor how it can affect Wing & Co., unless there are conditions to which our attention has not been directed. By the contract between the railroad company and Wing & Co., payments were to be withheld in such a way as to protect the railroad company from loss by reason of unpaid claims of contractors, it being therein provided that the bonds and stock of the railroad company, which Wing & Co. were to receive for building the road, were to be placed in the hands of parties in New York, to be paid out by them, upon certificates of the executive committee of the railroad company, at the rate of ninety per cent of the work done, and on acceptance of the road, the balance ; and further, it required Wing & Co. to furnish evidence to the directors of the railroad company of the completion of the road according to contract, and that the property was free from liens or incumbrances, etc. The sub-con-

tract was made and work begun under it before the mort-
gage was executed.   The property mortgaged was in
process of construction when the mortgage lien was cre-
ated, though, if the railroad company and the contractors
complied with their contract, the bonds were not deliv-
ered then, nor were they all deliverable until the road
was completed and free from liens arising in course of its
construction.   The contractors had a lien, expressly given
them by the statute, superior to all mortgages or other
liens accruing after commencement of the work.   (Rev.
Stat. par. 55, chap. 82.)   By the following section pro-
vision is made to protect sub-contractors to the extent of
the price agreed to be paid by the corporation to the chief
contractor.   The sub-contractor acquires a lien upon the
property of the corporation by giving the notice pre-
scribed in the section next following.   The notice was
given in this instance by the sub-contractors, and this suit
was commenced within the time provided by the statute.
It is clear that as against the railroad company a statu-
tory lien was acquired by the steps thus taken.   It is
urged that by the second proviso of paragraph 56 the
sub-contractor could not obtain priority over an existing
lien, and that by the proviso of paragraph 57 the lien did
not attach until the notice was given.   So far as the rail-
road company is concerned, the question is not important
whether the lien attaches from the time the notice is
given, or whether it relates back to the time work was
commenced under the sub-contract.   In either case there
is a lien upon the road, and whether that lien takes pre-
cedence of a mortgage executed after the work began and
before the notice was given, is a matter affecting only
those who claim by virtue of that mortgage.   The rail-
road company could not rightfully pay Wing & Co. until
the expiration of twenty days from the time the sub-con-
tract was finished, and by the terms of the contract be-
tween the railroad company and Wing & Co., as already
observed, care was taken to protect the former against

loss in this respect. (*Havighorst* v. *Lindberg*, 67 Ill. 463.) We are of the opinion the railroad company can make no complaint in this respect."

The only party appealing to this court is the railroad company, and a brief and argument have been filed in its behalf. But by leave of court the Central Trust Company of New York, D. L. Wing and A. M. Wing have assigned errors here. One of the errors assigned by them is, that the circuit court erred in decreeing that the sum found in favor of appellees was a lien upon the property of the railroad company superior to the lien of the Central Trust Company, and that the Appellate Court erred in affirming such decree. There are at least two sufficient reasons for overruling such assignment of error. In the first place, neither said parties, nor any or either of them, have filed any brief or argument, or joined in any, in support of either this or any other of their assignments of error. We are not advised by them of their grounds for making the claim that they do. But if we should waive this, and gather, as best we may, from the brief of appellant the supposed grounds of the claim made by the trust company *et al.*, that the courts below erred as above suggested, we are of opinion there is no merit in such claim. Section 55 of the statute gives a lien to the original contractors. This lien, under the circumstances of the case before us, had priority over the mortgage, since the statute expressly provides that such lien shall exist "as against all mortgages or other liens which shall accrue after the commencement of said work or labor." Then section 56 gives liens to sub-contractors, but provides that the aggregate of all liens so given shall not exceed the price agreed upon in the original contract. The section concludes with the proviso, "that no such lien shall take priority over any existing lien." The words "existing lien" manifestly relate to the time when the work is begun. Section 57 provides for a notice in writing to be served on the president or secretary of the railroad

corporation, "at any time within twenty days after the completion of the sub-contract." In the case at bar the required notice was given within the time limited. This continued and fixed the inchoate lien which commenced when the work was begun. The proviso, "that no lien shall attach in favor of any person performing such labor or furnishing material until such notice shall have been served," simply means that the incipient or inchoate lien of the sub-contractor will cease,—not "attach" to the property in the sense of becoming a fixed lien thereon,— if the notice is not given within the twenty days prescribed by the statute. Any other interpretation of the statute would render it inoperative to accomplish the objects intended by it.

It is insisted that the lien of appellees should fail in this case because of the defect in the notice in naming the proper railroad. The notice is as follows:

"*To D. L. Wing, President of St. Louis and Peoria Railroad Co.:*

"You are hereby notified that we have been employed by A. M. Wing & Co., original contractors, as sub-contractors for clearing, grubbing and grading for the said Chicago and Peoria Railroad Company. To secure our pay we append a copy of the contract made and entered into between the said A. M. Wing & Co., the original contractors, and us.

"Dated September 2, 1889.

Yours respectfully,

JAMES E. KERR & BROS."

The contract attached showed clearly that the work was in the construction of the St. Louis and Peoria railroad. The words "Chicago and Peoria," used in the body of the notice, were mere surplusage, as by leaving them out the notice would read "said railroad," which would have been sufficient. Taking the notice altogether, no other railroad could have been meant than the St. Louis and Peoria railroad, and for the purpose for which it was given it was sufficient.

It is next insisted that the holders of the bonds, to secure which the deed of trust to the Central Trust Company was given, should have been made parties defendant. It is a general rule in chancery that all persons interested in the subject matter of the suit should be made parties, and that in the case of foreclosure of a deed of trust the *cestuis que trust,* as well as the trustee, should be made parties. But where the beneficiaries are very numerous, and they are represented by the trustee, and the bonds secured by the deed of trust are transferable by delivery, only, they are not necessary parties. (*Land Co. et al.* v. *Peck et al.* 112 Ill. 408.) In this case the bill alleged the holders of the bonds to be numerous, and made the Central Trust Company of New York a party. The Central Trust Company answered the bill, and made no objection that the bondholders were not made parties. The trust company assumed to act for the bondholders, and if it desired them to be made parties it was its duty to then have disclosed their names, and made the request to the circuit court. Not having done so, the presumption is that it had authority to act.

It is next insisted that it was error to allow interest on the amount found to be owing by appellant to appellees. This position is based upon the theory that no definite sum was fixed by the contract, and that it was a matter of computation and judgment on the part of the engineer. We have already seen that the engineer and appellant, having withheld the estimate from appellees, put it out of their power to settle on that basis. The money due was on a written instrument, and "was withheld by an unreasonable and vexatious delay of payment." The interest was therefore authorized by section 2, chapter 74, of the Revised Statutes.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*