*Reversed.*

Ed Weidle et al., Appellees, v. Elgin, Joliet & Eastern Railway Company, Appellant.

### Gen. No. 14,546.

1. LIENS—*when subcontractor barred as against railway company.* The lien of a subcontractor being dependent upon service of notice, as required by statute, absence of such notice bars the right to the lien.

2. LIENS—*when subcontractor barred as against railway company.* The law does not give a lien to the subcontractor against a railway company until notice is served; all payments to the original contractor up to the service of such notice are rightful; if at the time the notice is served nothing is due the original contractor, and nothing thereafter accrues to him, no recovery can be had by the subcontractor of the railway company.

3. LIENS—*what essential to subcontractor's right to.* Liens of subcontractors can exist only upon the basis of the contract between the owner and the original contractor, and hence, can have no existence, and cannot be decreed when inconsistent with that contract.

4. DECREES—*when service by publication does not justify.* A personal decree cannot be rendered predicated upon substituted service.

5. PLEADING—*when petition multifarious.* Subcontractors having separate and distinct claims cannot join in a single petition to enforce their liens, but answering such a petition waives the point. The proper practice is for a single subcontractor to file a petition and the remainder intervene in the proceeding so instituted.

Mechanic's lien. Appeal from the City Court of Chicago Heights; the Hon. HOMER ABBOTT, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Reversed. Opinion filed January 18, 1910.

**Statement by the Court.** This is a proceeding originating in a petition in the City Court of Chicago

Heights, filed, jointly, by seventy-two parties to establish a lien upon all the property, real, personal and mixed, of the defendant railway company, under the provisions of ''An Act to protect contractors, sub-contractors and laborers in their claims against railroad companies, or corporations, contractors, or sub-contractors.'' The petition was filed on September 5, 1906. The act in question is found in chapter 82 of the Revised Statutes. The railway company was constructing an additional track along its line between Dyer, Indiana, and Matteson, Illinois, and, on April 28, 1906, entered into a contract with Thomas P. McDonough and Howard M. Lloyd, whereby McDonough and Lloyd undertook to ''construct and finish,'' on or before July 10, 1906, the grading, that is, all excavations and embankments for the formation of the roadbed, ditching, diversions of roads and streams, foundation pits, and all similar work connected with or pertaining to the construction of the additional railway track, its side tracks and station grounds. McDonough and Lloyd thus became and will be referred to herein as the original contractors for this grading. They were made parties defendant to the petition but were only served by publication and were defaulted because they did not appear. The contract for the grading provided that payments of 85% were to be made on the fifteenth day of each month, for the work done during the preceding month, upon estimates of the company's engineer. The remaining 15% was to be retained until after the complete performance of the work under the contract.

On October 26, 1907, the court rendered a decree establishing liens in favor of fifty-three of the petitioners, severally, for various amounts aggregating over $3,000, and decreeing that McDonough, Lloyd and the railway company pay these fifty-three petitioners, severally, the amounts for which liens were allowed. The railway company prosecutes this appeal to reverse that decree.

According to a stipulation of the parties who ap-

peared in the cause we find that the original contractors began work on April 30, 1906, and, on June 26, 1906, after having moved 16,675 cubic yards of material, quit work and thereafter did no work under their contract; that on July 10, 1906, the original contractors abandoned the performance of the contract; that, thereafter, on July 10 or 11, 1906, the railway company, itself, took up the work and, after having moved 26,650 cubic yards of material, completed the contract work by October 1, 1906; that a price per cubic yard of material moved was the measure of compensation under the contract; that the railway company had paid $3,841.92 and furnished material for $36.80 to the original contractors when they quit and, thereafter, the company expended $10,890.25 more in completing the work under the contract, so that it cost the railway company $2,854.43 more than the contract called for to have the contract work completed; and, that, after allowing all just credits and set-offs, this latter amount is due and owing from the original contractors to the railway company, on account of the original contractors' breach of contract.

According to the engineer's estimate it appears that when the original contractors quit, more material had been moved than the original contractors had been paid for to the amount of $707.07. This was due to the 15% reservation.

The numerous petitioners severally claim either as subcontractors, workmen or furnishers of material, under verbal agreements with the original contractors.

The notices required to be served, under section 3 of the act of the legislature now in question, by subcontractors, material men and laborers, in order to acquire a lien, were served by various claimants at various times during the period beginning with July 16, 1906, and continuing until September 11, 1906.

KNAPP, HAYNIE & CAMPBELL and MARK BREEDEN, JR., for appellant.

CRAIG A. HOOD, for appellees; CHARLES H. ROBINSON, of counsel.

MR. PRESIDING JUSTICE CHYTRAUS delivered the opinion of the court.

Section 2 of the act under which the petition herein is prosecuted, speaking in a general way, provides that subcontractors, material men or laborers, who shall furnish material or do work, in conformity with any of the terms of any contract, express or implied, which an original contractor may have made with the railway company, shall have a lien. The section contains a proviso as follows: *"Provided,* such subcontractor, material man or laborer shall have complied with the provisions of this act; but the aggregate of all liens hereby authorized shall not, in any case, exceed the price agreed upon in the original contract to be paid by such corporation to the original contractor."

Section 3 provides that such subcontractor, material man or laborer shall give notice to the railway company of his employment, or that he has furnished materials and that the notice must be served "within twenty days after the completion of such subcontract or such labor." This section has the following proviso, viz.: *"Provided,* that no lien shall attach in favor of any person performing such labor or furnishing material until such notice shall have been served as above."

After June 26, 1906, the subcontractors, material men and laborers now before the court as petitioners furnished nothing and did no work in conformity with the original contract, so far as we can perceive from the record. Indeed the evidence, aside from the stipulation, rather indicates that nothing was furnished and no work was done by them after June 23, 1906. Manifestly, so far as there was any completion of subcontracts or labor by these petitioners, such completion occurred on or before June 26, 1906, when work was stopped under the McDonough-Lloyd contract. Petitioners have adduced no evidence and do not contend

that they then left incomplete any subcontracts or engagements for labor. So far as any reason is concerned, why they then respectively quit, the record is silent. Assuming, therefore, completion on that date of the subcontracts and engagements for labor of the several petitioners, it became incumbent upon such of them as desired liens upon the railway company's property to "attach" in their favor, to serve notices within twenty days of June 26, 1906. Those who failed to serve notices within that time are absolutely barred merely by that failure. By the stipulation it is only agreed that McDonough and Lloyd quit work on June 26 and, in reality, there is nothing in the record to exclude the thought that some or all of the petitioners may have quit work long before that date, except, possibly, the testimony of the company's engineer and a letter written by McDonough some time after August 10, 1906. The engineer's testimony indicates no one worked after June 23, but he rather qualifies this, later, by saying it might have been as late as June 26 or 27. McDonough's letter, which, under the circumstances, can serve only as an admission against himself, says the original contractors abandoned work on June 23, 1906. The petitioners, perhaps, all failed to establish evidence of essential facts going to show that they served notices in such seasonable time as to have liens attach.

As to those of the petitioners who served notices on July 16, 1906, we prefer, however, in view of the stipulation, to place our decision on a ground other than the lack of service of notice in due time. The statute specifically provides that no lien shall attach in favor of any person performing labor *until* he shall serve notice. Consequently, owing to failure to serve notice earlier, no lien could here attach in favor of any of these petitioners prior to July 16, 1906, the day on which notices were served. Whether any lien attached on that date depends upon the then situation under the original contract. The act involved provides, speaking accurately, for the *acquisition* of liens upon the

service of notice by the persons specified. The statute does not establish the lien without the service of a notice upon the railway company. Although the statute provides for the acquisition of liens, yet it remains entirely optional with subcontractors, material men and laborers whether, by the service of notice, they will acquire liens or not. A particular subcontractor, material man or laborer may or may not desire a lien. He has the privilege. Unless and until he chooses to serve a notice he has no lien. All payments made by the railway company to the original contractor prior to service of notice are, so far as these possible lienors are concerned, both rightful and lawful payments. Such prior payments, made in good faith, are in contravention of no legal or equitable right of a subcontractor, material man or laborer. No language in this statute giving this special privilege to these subcontractors, material men and laborers, enlarges that special privilege by expressly or impliedly inhibiting the making of payments provided for by the original contract, prior to service of notice. To hold such inhibition to exist would be to enlarge the special privilege given. We cannot change the statute or enlarge the privilege by judicial legislation. This statute is in derogation of the common law, and its effectiveness must not be extended by inference or implication. On July 16, when the notices were served, the original contractors were entitled to nothing and there was nothing earned or owing under the original contract. The original contractors had then abandoned the work and their contract, and the railway company took up and completed the abandoned work at a cost and expense to itself of $2,854.43 more than the cost would have been had the original contractors completed the work. On July 16 only 16,675.6 cubic yards of material had been moved which, at the contract price, amounted to $4,585.79. Of this amount $3,878.72 had been rightfully paid out to the original contractors by the company. Petitioners, as shown, are, under this statute,

entitled to no lien as to the money paid out before notice served.

There is nothing in the act to indicate that where a company has failed to observe no provision thereof the railway company should be required to pay, substantially, twice what it has contracted to pay for work done. Payment twice would be, practically, the result of now requiring the company to pay to these petitioners over three thousand dollars, in addition to the amount paid the original contractors. Had petitioners served notices in season instead of trusting alone to the credit of the original contractors, the situation we are now dealing with would not have arisen. Section 2 of the act, which provides that when the liens authorized aggregate in excess of the original contract price the company shall, nevertheless, not be required to pay more than that contract price, indicates, to a slight extent, that when the company itself in nowise fails to observe the law it shall not be required to pay more than the contract price. We shall presently come to the $707.07 difference between the $3,878.72 and $4,585.79.

When the original contractors abandoned the contract work but little more than one-third of the grading had been done. We cannot indulge in the absurd supposition that the law-making powers intended, by the act involved, to allow these petitioners, who quit work with the original contractors, a lien as to, or for, the cost of doing the grading undone when the original contractor abandoned the contract. Certainly no such intention should be inferred when it appears, as here, that the doing the work left undone by the original contractors cost not less but more than the contract price, so that a shortage resulted which the company was obliged to make good.

Of the total contract price out of which, only, liens should be awarded to be paid where the company has not failed to observe the law, we have already considered the amount paid out to the original contractors and the

cost of the portion of the grading left undone; there remains, of the contract price to be considered, the $707.07, representing the 15% held in reserve until the completion of the contract work. This reserve was not earned by the original contractors when they quit and, as events developed, never became due to them, under the contract. The original contract contained a provision, substantially, that if the original contractors should neglect to prosecute the work with sufficient force for its completion within the specified time, then the railway company "may proceed to take possession of and use in completing the work all tools supplied, and materials on the work or prepared for it and to employ such additional workmen, laborers, teams and overseers, as may, in the opinion of the said engineer, be necessary to insure the completion of the work within the time specified, or as soon thereafter as practicable, at such prices and wages as the said party of the first part may find necessary or expedient to give; and charge the amount so expended for labor and materials to the parties of the second part, as for so much money paid to the parties of the second part on this contract." The original contractors certainly neglected to prosecute the work with sufficient force when they quit work entirely. The 15% reserve can be considered as earned and owing only after it has been made to appear that it would not become necessary, under the provisions of the contract, to expend it in the completion of the contract work. Here it appears that it became necessary to expend the reserved amount, and more, in the completion of the work. To require the 15% reserved, or any part thereof, to be devoted to the payment of the claims of the petitioners would be inconsistent with the terms of the original contract.

It must be said of the kind of lien here contended for as was said of mechanic's liens in Williams v. Rittenhouse & Embree Co., 198 Ill. 602, 611, "The lien is in derogation of the common law, is opposed to common right, and cannot be given except when authorized by

the provisions of a statute strictly construed.''

In the case of Von Platen v. Winterbotham, 203 Ill. 198, 205, it was said that where the contract with the owner is sufficient to create a mechanic's lien it may well be implied that the owner, through the agency of the contractor, assents to the subcontractor's liens by the employment of labor and procuring material to carry out the contract, but if the contract with the owner is inconsistent with the existence of a lien the creation of a subcontractor's lien can rest on no such assumption and, it was further said, that no reason was apparent why subcontractors should be permitted to establish liens inconsistent with the original contract or in violation of its terms. The like reasoning is applicable in the case at bar. It would be inconsistent with the provisions of the contract involved to require the company to pay the claims of these petitioners, or any part thereof, in addition to the amounts it has already expended.

In view of the tardiness of these petitioners in not serving notices until everything earned under the contract had been rightfully paid out to the original contractors, the lien act involved does not require further payment by the railway company and, not only that, but, under the circumstances of this case it would be exceedingly unjust and inequitable to require it to pay the claims made. We do not mean thereby that it would be unjust that petitioners should be paid, but that it would be unjust now to require the railway company to furnish the money with which to pay them.

The record discloses another reason why the decree before us should be reversed. The only service upon McDonough and Lloyd was by publication and they did not appear. Yet a personal decree against them was rendered requiring them to pay the amounts of the several claims. Further, the decree, so far as they are concerned, was rendered upon a stipulation between the solicitors for the petitioners and the solicitors for the railway company and without any evidence being adduced against McDonough and Lloyd in respect of

material facts. The counsel not representing a party cannot so stipulate away his rights. Were the decree properly rendered it would be *res adjudicata* between the original contractors and the railway company.

The several petitioners who joined in the petition filed had no joint right against the defendants. Their contracts were several and independent each of the other. The petition was, therefore, multifarious. The point was raised in the court below and is raised here. Had defendants stood by their position in that regard in the court below it would undoubtedly have resulted fatally to the petitioners' claims. But, by answering, the railway company waived the point. The better procedure for petitioners would have been to have filed a petition on behalf of one of the petitioners and therein, in addition to the facts material and pertinent only to himself, to have stated, fully and at large, all the general facts common to all the lien claimants; then, that being done, all the other lien claimants could have come in by their several short intervening petitions wherein each would have adopted from the original petitions, by reference, the general facts common to all and then, in addition, have stated fully the facts material and pertinent to himself alone. As there are several distinct issues raised as to different petitioners this record would, by such procedure, have been materially simplified. It is now in a very disordered state. As to some of the petitioners—those whose claims were disallowed below—there has been no formal final disposition of the case. Other errors of more or less materiality also appear.

For the reasons herein indicated the decree will be reversed and the cause will not be remanded.

*Reversed.*