## T. B. Wright & Sons, Appellees, v. Cleveland, Cincinnati, Chicago & St. Louis Railway Company, Appellant.

1. STATUTES—*how to be construed.* In the interpretation of a statute consideration should be made of all the parts together, and not of one part by itself, to determine the object and purpose of the enactment, and it should be so construed if possible that the whole may stand and every part have some force and meaning.

2. LIENS—*act as to liens upon railroads construed. Held,* that it was the purpose of this act to give a subcontractor three different remedies either of which he might pursue.

3. LIENS—*what essential to establishment by subcontractor against railroad.* In proceeding by either of the three remedies given by the Act of 1872 the subcontractor can in no event enforce a lien against the property of the railroad company except where the company is indebted to the original contractor.

4. LIENS—*right of railroad to pay contractor.* A railroad company has the right to pay its contractor before notice of a subcontractor's claim for lien.

Bill in equity. Appeal from the Circuit Court of Wabash county; the HON. E. E. NEWLIN, Judge, presiding. Heard in this court at the October term, 1911. Reversed and remanded with directions. Opinion filed March 21, 1912.

P. J. KOLB, for appellant; GLENNON, CARY, WALKER & HOWE, of counsel.

E. B. GREEN and THEO. G. RISLEY, for appellees.

MR. JUSTICE SHIRLEY delivered the opinion of the court.

Appellees filed a bill in equity against appellant to enforce a lien for material furnished a corporation named Widell Finley Company, a contractor, to perform concrete work for appellant upon its line of railway. The court found appellees entitled to a lien upon all the property of appellant, real, personal and mixed, for the payment of the sum of $1,839.90 and so decreed.

The evidence disclosed that on July 17, 1905, the Widell Finley Co., hereinafter called the contractors, entered into an agreement with the Cairo, Vincennes & Chicago Railway Co., hereinafter called the railway company, to construct certain tracks and bridges and to reduce grades along the line of said railway between Allendale and Harrisburg, Illinois. The masonry to be used in the construction was to be of concrete and the contract provided the work should be accepted by appellant and certified by it in writing. It further ap-

248    APPELLATE COURTS OF ILLINOIS.

Wright & Sons v. C., C., C. & St. L. R'y Co., 169 Ill. App. 246.

pears that in the year 1889 the said railway company entered into an operating contract with appellant whereby the said railway company leased to appellant the line of railway upon which the work of said contractor was to be performed for a period of forty-nine years, and at the time of entering into the contract for the work by the railway company and during the time appellees furnished material, appellant was operating said railway under said lease.

The lease among other things provided appellant should maintain the entire railway property in as good condition as it then was. The answer of appellant admits that it determined as such lessee to reconstruct and rebuild the said railway in the name of the railway company, and for that purpose the railway company entered into the contract with the said contractor for the construction of bridges and culverts; that the work was to be done under the control and direction of appellant's engineers and appellant was to pay for the work.

The evidence shows that appellees furnished to the contractor a lot of material of the value of $1,796.68, which was reduced by credits to the sum of $1,455, being the amount due at the time of the trial not including any interest. The evidence shows the material so furnished was used in constructing buildings for housing laborers and in making concrete forms for bridges and culverts. After the contractor had been for some time engaged in the work it failed and appellant took up the work and finished it.

It is contended by appellant that the contractor having failed to complete the contract the suit should have been brought under section 7 of the railroad lien law instead of section 2 which is relied upon by appellees, and that appellees mistook the remedy in not proceeding under section 7.

The act of 1872 entitled "Liens Upon Railroads" contains eight sections. The purpose of the act as

shown in the title was "to protect contractors, sub-contractors and laborers in their claims against rail-roads, contractors and subcontractors." The first section provides for a lien in favor of persons who con-tract directly with the railroad company and who fur-nish material, supplies or labor necessary for the con-struction, maintenance, operation or repair of the road. The lien is given against all the property of the rail-road and is superior to all mortgages or other liens which accrue after the commencement of the delivery of the material or of the labor furnished.

Section 2 relates to subcontractors and those who furnish material and labor to the contractor and reads as follows:

"Every person who shall hereafter as subcontractor, material man or laborer furnish to any contractor with any such railroad corporation any fuel, ties, materials, supplies or any other article or thing or who shall do and perform any work or labor for such contractor in conformity with any terms of any contract express or implied which such contractor may have made with any such railroad corporation, shall have a lien upon all the property real, personal and mixed, of said rail-road corporation: *Provided* such subcontractor, ma-terial man or laborer shall have complied with the pro-visions of this act; but the aggregate of all liens here-by authorized shall not in any case exceed the price agreed upon in the original contract to be paid by such corporation to the original contractor:

"*And provided further,* that no such lien shall take priority over any existing lien."

Sections 3 and 4 provide for notice by the subcon-tractor to the railroad company. Section 5 provides for a suit at law (after the above notice) against the corporation, or the corporation and original contractor jointly, and for judgment and execution. And section 6 for attorneys' fees in such cases to be taxed as costs.

Section 7 provides that if the original contractor fails to complete his contract any person entitled to

a lien may file a petition in a court of record in any county through which the road may be constructed against the corporation and the contractors, setting forth the nature of his claim, the amount due as near as may be, and that the contractor has failed to complete his contract. This section then requires notice by publication of the filing of the petition and when the writ issued thereon is made returnable and then provides that all persons entitled to liens may enter their appearance, interplead and have their claims adjudicated. It further provides that all persons who establish their claims shall have a decree against the corporation and the contractor for the respective amounts to which they are entitled and the decree shall have the same force and effect as in other cases. Section 8 is a limitation section not material to be considered.

It is an elementary rule in the interpretation of statutes that construction should be made of all the parts together, and not of one part by itself, to determine the object and purpose of the enactment and they should be so construed if possible that the whole may stand and every part may have force and meaning. Endlich Interp. of Statutes, 35; 4th Gil. 221; Chatham v. Mason, 53 Ill. 411; Decker v. Hughes, 68 id. 33.

After an examination of the several sections referred to we conclude it was the purpose of the act to give a subcontractor three different remedies by said sections two, five and seven, either of which he may pursue. It is true section 2 provides no specific remedy to enforce the lien which the section gives the subcontractor after complying with the provisions of sections 3 and 4 which provide for notice and service thereof, but it in plain terms furnishes the lien and as it does not furnish a remedy one is implied. "When a statute creates a new obligation * * * a corresponding right is thereby impliedly given either to the public or to the individual injured by the breach of the enactment,"

FOURTH DISTRICT—MARCH, 1912.     251

Wright & Sons v. C., C., C. & St. L. R'y Co., 169 Ill. App. 246.

(Endlich Interp. of Statutes, 463) and as the enforcement of a lien is an equitable remedy he may have his remedy by filing a bill in equity. Pom. Eq. Jur. 112, 171.

The remedy provided by section 2 is against the railroad corporation exclusively; that provided by section 5 is a suit at law either against the corporation alone or against the corporation and contractor jointly while section 7 provides a remedy against the corporation and contractor jointly in favor of persons entitled to liens and the right is conferred only in cases where the contractor has failed to complete his contract.

We are of opinion that where the contractor fails to complete the work the subcontractor is not confined to section 7 as an exclusive remedy but may proceed under section 2.

In proceeding by either remedy, however, the subcontractor can in no event enforce a lien against the property of the railroad company except where the company is indebted to the original contractor by the terms of its contract with him. The proviso in section 2, *supra,* under which this suit was brought, provides that "the aggregate of all liens hereby authorized shall not in any case exceed the price agreed upon in the original contract to be paid by such corporation to the original contractor." There being no provision of the statute which prevents the railroad company from paying the contractor for work performed before notice of a claim for lien, it may do so and discharge itself from any further obligation to pay the subcontractor. Sampson v. Buffalo N. Y. and P. R. Co., 13 Hun (N. Y.) 280.

The evidence is undisputed that the contractor when it became bankrupt in February, 1906, did no further work and left its contract uncompleted. At this time it had been overpaid on its contract the sum of $1610.-68. The railroad company had retained the sum of $4880, being ten per cent of the estimates earned by

the contractor for work performed, so that when the work ceased the railroad company had in its hands of money earned by the contractor after deducting the overpayment of $1610.68, the sum of $3269.32. It is further shown that the railroad company took charge of the work and finished it at a cost of $9500.78 in excess of the amount of the contract price and after the amount retained had been expended. It is further shown the railroad company expended this sum economically and judiciously.

Paragraph 22 of the contract between the railroad company and the contractor provides:

"If the contractor shall at any time fail or refuse to comply with any of the provisions of this contract to be determined by the engineer of the company, the company shall have the right and power to cancel and annul the same in which event the contractor shall have no claim or demand whatever upon or against the company for damages or compensation for work or material done or furnished or for any portion of the percentage retained on monthly estimates and the company shall have the right, power and authority to take possession of and hold said work and all materials furnished under this contract and to retain and appropriate to its own use as liquidated damages all money which may then be due to the contractor including said percentage and the company shall be absolutely and forever released from all liabilities to the contractor therefor."

By this paragraph of the contract and under the evidence the railroad company had the right to retain the $4880 percentages and nothing was due and owing the contractor. This being so, no lien could be enforced by either the contractor or its subcontractor. Weidle v. Elgin, Joliet & Eastern Ry. Co., 152 Ill. App. 292. It is claimed by appellees that the railroad company having paid the contractor $4800 for work performed, it was its duty under paragraph 23 of the contract to protect appellees, and it is argued such payments with-

FOURTH DISTRICT—MARCH, 1912.    . 253

Wright & Sons v. C., C., C. & St. L. R'y Co., 169 Ill. App. 246.

out such protection were wrongful. As we have said the railroad company had the right to pay the contractor before notice of appellees' claim for a lien and while paragraph 23 of the contract provided that the engineer of the railroad company might require the contractor to furnish him a pay roll showing the amount due subcontractors and might at his option pay them and deduct the amount from the sum due the contractor, he was not bound to do so and the railroad company had the right to pay the contractor and relieve itself from any obligation to pay the subcontractor before notice of the subcontractor's claim.

It is argued that the contractor did not suspend the work by reason of any voluntary act of its own but was forced into involuntary bankruptcy; that therefore there was no breach of its obligation contained in paragraph 22, and the railroad company had no right to appropriate the percentages retained. The percentages were retained before the contractor became bankrupt and although the bankruptcy proceedings suspended the work this did not deprive appellant of the right to retain the percentages for the failure to complete the contract. If such percentages had not been exhausted as they were in finishing the work a court of equity might treat them as a penalty and appropriate any sum left to the payment of subcontractors entitled to liens.

In support of the claim of appellees that their lien which was inchoate prior to the service of notice took effect from the time they began furnishing material and that the payment of estimate to the contractor of $4800 thereafter without protecting appellees was wrongful, the case of St. L. & P. R. R. Co. v. Kerr, 153 Ill. 182, is relied on.

The question in that case was one of priority of liens and it was held that the subcontractor's lien attached as against a mortgage lien executed by the railroad company and recorded after the work com-

menced. This holding was in conformity with paragraph 2 of the statute *supra,* which provides "that no such lien shall take priority over any existing lien" and it is said in the opinion the words "existing lien" manifestly relate to the time the work is begun. We are of opinion the case cited has no application to the payment of estimates by the railroad company to the contractor before notice of the subcontractor's claim for a lien.

Holding as we do that there was nothing due the contractor at the time of the service of the notice to which any claim of appellees for a lien could attach it will not be necessary to consider other errors assigned. The decree of the circuit court will be reversed and remanded with directions to dismiss the bill.

*Reversed and remanded with directions.*